The defendants argue that there are two lawyers at the podium, are you both intending to argue or just one of you? Both intending to argue, Your Honor, and we discussed ahead of time how we would allocate our time. All right, I'll discuss that with you at the podium then. Thank you. And I'll reserve seven minutes for that response. All right. It's your responsibility to keep track of it, but I'll try to tell you when you get down to seven. I'm watching the clock. I'm looking at the clock. Okay. Go ahead. Good morning. I'm Tom Beck and I'm representing Mr. Rezek as the appellant on this rather unusual appeal. What I want to begin with is to point out that the thing that's probably most important to us is the issue of the favorable termination caused by an acquittal in a mixed result juried criminal trial. Neither myself nor my opponents have ever come up with a case, either in the federal system or in the California courts, that speaks directly to this point. So how do you get around Staff Pro? Very simply. Staff Pro is a civil case. And in a civil case, as all the cases tell us, when you bring an action, a civil action, those cases are all based on the primary rights theory. There's one wrong, several theories, and you get to the end of that case with a single judgment. That could never occur in a criminal case. A criminal case with multiple counts, each count stands on its own. And as I pointed out in the brief, California recognizes severability. It's just never been applied to a criminal case. And I do want to comment on the fact that where the cases have said, and as Judge Carter in his own ruling on this issue had said, that California doesn't make a distinction between civil and criminal cases. If you read those cases carefully, what those cases have been saying, when they did make reference to Singleton, which is the only criminal case that has been discussed by the California Supreme Court and the others, is that yes, when you have a malicious prosecution cause of action, whether it's criminal in origin or civil in origin, favorable termination is always an element. The distinction that I'm drawing is that if you have a mixed result, as we do in this case, and there's nothing in common between the two counts, even though they arise from the same incident, the case law supports that the aggrieved plaintiff who can show absence of probable cause and malice plus a favorable termination by an acquittal should be able to proceed on that cause of action, notwithstanding a conviction on another cause. Let me ask you this. Are you asking us to certify this question to the California Supreme Court? Because the cases most directly addressing favorable termination, you know, the Casa Herrera, the Staff Pro, those cases, all point to you have to have favorable termination on the entire action. Now, I understand your argument that those cases are not directly on point, but I didn't see any California cases nearly as close pointing in the other direction. So are you asking us to certify the question? It has come to my attention, and in fact you should be told that at this present moment I'm handling this identical issue in front of the fourth DCA in a case called Baranchik v. The City of Redondo Beach. Precisely the same case. So you can say yes or no. Are you asking to certify this? I would ask to certify it, because since it's a state law question and I wouldn't want the court to start reading tea leaves as to what the Supreme Court might do. It's my belief, based on everything I've understood, that the court's history of its decision-making, that it says that if you make a claim in a case that is made without probable cause and it's made maliciously, and then you can proceed on a malicious prosecution claim in those cases, they would never ask to, which is the point. If you can demonstrate that in any given case, civil or criminal, then they wouldn't take that right away if you prevailed in the claim that's being made that's made without probable cause and with malice. It's never been said, but I think that's where the Supreme Court would go if it were asked to. I don't know whether Baranchik is going to take it there, but I think that in the interest of letting the state courts decide on what state courts want to do with an issue such as this, then it should be certified to the California Supreme Court. Well, so in the other case that you're talking about, did you already lose, and then you're petitioning the Supreme Court? No, I'm not petitioning the Supreme Court. I am appealing from a summary judgment disposition on the favorable termination issue. In front of the fourth? It's Division IV at the 2nd DCA in Los Angeles. Okay, so they haven't issued a decision yet. I filed the reply brief on Monday. So I do know that that's there, and it's been teed up for them as it was teed up for here, and given the fact that it's really a state law question, I'm going to leave it to you to decide how to handle it, but there is a method and certification is that method. Let me talk about another point that I raised on the appeal, and that is the IPC defendants. On October 5th of 2012, the court overruled a 12B6 motion against the 1983 claim made by RESC against those defendants. That same complaint was subject to a second 12B6 motion on the 27th of January in 2014, and Judge Carter overruled that demur, so to speak, finding that the allegations were suitable, satisfactory, and met the pleading circumstances for the wrongs that I was alleging on behalf of Mr. RESC. And then suddenly on May the 30th of 2014, when the IPC defendants made their third motion, the court took a completely different position. In its ruling, it said that I had not opposed that part of the motion. Well, I did. What I essentially did, and you can see this from the excerpts, is that I didn't address it as I did in the first two motions, but I said the court has now had an opportunity to pass on the sufficiency of this pleading twice, and it really ought not to be considered again, and that's all I call to the court's attention. What claims specifically are we talking about here? As against the IPC? Well, are you talking about the emotional distress, and are those the claims we're talking about? No. The court dismissed IPC from the 1983 claim, too. You're talking about the conspiracy malicious prosecution claim. Correct. The conspiracy to deprive my client of his fair trial rights, as between the government officials and the private parties. And that is the claim that had been attacked on previous occasions. There was an allegation that there wasn't sufficient evidence of those private party defendants. I wasn't sure what your argument was. Were you saying that the district court revised its determination based on additional research and review and thought, and then came up with its final determination? Are you saying that there is some rule of law that would preclude the district court from making changes as it got more educated? No, not at all. What I'm saying is the court could have changed it. It's an interlocutory decision. It can change it any time it wants to. My approach to the third 12B6 motion, given the long time in between those motions, was you've already ruled on this and found it sufficient. When the motion came back and said that I didn't oppose that part of the motion, I made an instant recon motion because I had. I didn't address it with the particularity that I would have liked to if I had known that the judge was reconsidering his position. To me, it's a basic due process denial for me to be blindsided by this 180 that the court took on me on the 1983 claim by dismissing it. He gave his reasons, but I was not put on the alert as for the reasons. And, as I said, what I had done previously in the first amended complaint, the original complaint, the first amended, and now the third, was deemed by the court to be satisfactory. I felt solace in the fact that I had done, and it was just an argument being made by the IPC defendants, that reiterates the same thing. How many times can you make the same argument to the same judge? Let me ask you a different question. Mr. Beck, can I ask you a question? Of course, Your Honor. What facts, rather than conclusory statements, did you plead to show that there was a conspiracy between the IPC defendants and the Tustin municipal employees? I pled that the two IPC employees, Ibarra and Reyes, were present to watch the contact by the Tustin police officers, that they were, in fact, recipient witnesses to the event, that they were there from the beginning. I think I also pled in the summary of the case that the woman that Mr. Resnick was on the telephone with overheard the comment made by the police officer to the guy that wasn't supposedly there, and that those two came to a meeting of minds, as how I described it in the complaint, an agreement, that they would claim they came later when it was all over. That's as much as I could do at the time. I had the plaintiff told me they were there. The woman on the telephone supported that. Both defendants told me that the guys weren't there. And then at the criminal trial, it's more light shed on it. How? Because they claim that Ibarra and the officers did testify that Ibarra and Reyes showed up 15 minutes after the arrest took place, and were not witnesses to the takedown or the uses of force. And then when the Ibarra and Reyes testified in the criminal trial, it turned out not to be so. They didn't say it was 15 minutes. They claimed, one of them did, that when they arrived on scene, Mr. Resnick. I think you're going beyond the scope of my question. I didn't ask what happened in the criminal trial, did I? No, you did not, but I pled what I learned. Would you point to me what paragraphs of your operative pleading state facts which make it plausible that there was a conspiracy, so to qualify under the Iqbal and Twombly requirements? I anticipated the question. It's in the appellant's excerpts of the record at page 191, paragraph 8 of the third amended complaint. It's the same paragraph in the first, the original, and the second. Okay, thanks. I'll take a look at that. And what I wanted to point out is that. If you want to reserve any time, you're down to four right now. Can I just ask one other question? It's really our time, so it's only aspirational that you can reserve seven minutes. There's a pending before the Supreme Court now is a case, Manuel v. City of Juliet, which is revisiting how a malicious prosecution, 1983 claim, would be stated. Yes. Is that something that's going to affect this case, and should we be waiting for the result in that? I do not believe so, only because our issue has to do with the application of the favorable termination issue. Well, we're basing our 1983 conspiracy on how we stated it in Usher, which it's unclear, but I assume it's a due process type claim requiring an intent to deny constitutional rights, but the Supreme Court is revisiting that question. But do you think that, so the elements of what is a malicious prosecution claim, I guess, are up in the air based on this manual. Is that correct? With one additional caveat. The Usher case says that if the state doesn't provide for relief for malicious prosecution, that's the big one. And in California, police officers are absolutely immune from malicious prosecution. There is no remedy under California law for malprause against a peace officer. And I'll just say what I got left. Okay. Thank you. Good morning, Your Honors. Lois Boback for the. . . Before we start doing the clock, I want to have a discussion about how we're going to divide the time. Say your name again. I'm sorry. Lois Boback for the Tustin police officers, Brian Chupp and Mark Turner. And so how did you plan to divide your time? I will take no more than seven minutes, although, I mean, ten minutes, although I think I'll get it done in probably seven or eight minutes and leave the balance to counsel for the ICP defendants. Okay. So if you take your ten and that leaves five for them, is that what you're saying? Yes. Okay. What I will tell you is if we have additional questions ever and take her beyond the ten, I'll still give you the five, all right? So you don't need to feel, sit there and want to leap up and pull her off the podium because sometimes. . . But if otherwise, if we don't have any questions, then I'm going to tell you at ten when you've used ten to let him get up. Okay. Thank you, Your Honor. Thank you. I think that both parties agree that the question of favorable termination is a question of law and that it's a question of law based on California law. In this case, there are really three reasons why the determination of the district court should be affirmed. First, under California law, favorable termination requires a complete victory in the underlying action, whether that action is civil or criminal. Is there a criminal case on point where there were two separate charges against the defendant as in here? Not that I'm aware of, Your Honor. There's no case on point, right? Not directly, but in Babb v. Superior Court, the California Supreme Court, that was a case where there was an underlying civil case, and they were citing with approval the holding where the underlying case was a criminal case, and the Babb court case said, it doesn't really make a difference whether or not the underlying case was civil or criminal. The rationale on favorable termination is the same. But it didn't address the severability issue. It did not specifically address the severability issue. So are you opposed to certifying this question to the California Supreme Court? I think if there's any question in this Court's mind as to what the California Supreme Court would do, then certification is the appropriate route. I would submit that the California courts have already decided the issue and that certification is unnecessary, but certainly if there's any doubt in this Court's mind, it is a question of California law, and the California High Court should decide the issue. But I would submit, again, as we set forth in our briefs, that it's... You read the tea leaves to say that they would decide it like staff pro. Absolutely. But if we don't read them that way and we say it's not, we're not sure, then you say certify. Yes. Because this Court shouldn't be making California law. It should just be applying existing California law. Crowley held, the California Supreme Court and Crowley held, that in discussing favorable termination, which was raised by one of the defendants in that case, said that when you look at favorable termination, you have to look at the underlying judgment as a whole. Staff pro, a California appellate court decision, then squarely addressed the issue of severability and said the severability analysis that applies to malice and probable cause don't apply to the favorable termination element of a malicious prosecution cause of action. If we think that it's up in the air for criminal cases on favorable termination, is there another way to resolve the case without certifying the question? Yes, Your Honor. There are two other ways. First, under the specific facts of this case, the two underlying criminal causes of action are not completely severable. Mr. Resnick was charged with vandalism and convicted of vandalism and also charged with resisting arrest and he was acquitted of resisting arrest. But under California law, under Penal Code Section 148A, the actions of the police officers with regard to the underlying arrest are an essential element of a cause of action for resisting arrest. Under 148A, a police officer has to be acting within the legal scope of his or her duties in order for there to be a 148A resisting arrest cause of action. So if there was no probable cause for the vandalism charge or if excessive force was used in the vandalism arrest, then the officers weren't engaged in the lawful performance of their duties and there could not have been a 148A cause of action. So in order to establish resisting arrest, the prosecution had to be looking at the vandalism charge. Those two can't be separated under California law. So I think even if you get to the severability analysis, you have to conclude that in this particular case, those two underlying criminal cases or criminal charges were not severable because the validity of the vandalism arrest was a part of, an element of the resisting arrest charge. The second reason, Your Honor, is one that admittedly was not raised in the trial court because it couldn't have been raised in the trial court. At the time the trial court made its determination, we didn't have the jury verdict on the excessive force claim. But again, if a police officer uses excessive force, then he's not exercising his lawful duties. We know from the criminal case that Mr. Resnick was convicted of vandalism. So obviously the jury in that case determined that there was probable cause and that he actually committed the vandalism charge. So we know the first element of a resisting arrest charge was established. We also know from what happened after the trial court made its determination in this case that the jury in the federal civil rights case concluded that there was no excessive force. If the officers had used excessive force, the vandalism charge would have been improper. And if they had, if the underlying vandalism charge, if there was no Wait, wait, wait. If they had used excessive force, the vandalism charge would be? Invalid because an officer can, because they would not have been acting within the lawful scope of their duties. You're just talking about the resisting arrest. I mean, he could still be convicted of vandalism even if they use excessive force in arresting him. Yeah, you're right, Your Honor, and I apologize. Let me just focus on the resisting arrest, and I apologize. Does the vandalism happen before the officers even showed up? Yes. During the arrest, if the officers had no lawful authority to engage in that arrest, Mr. Resnick would have been authorized under both federal and California law to use a reasonable degree of force to resist an unlawful arrest. We know that, we know now that that can't have been the case because the jury in the federal civil rights case ruled that the officers did not use constitutionally excessive force. They could, if they didn't use constitutionally excessive force, that necessarily means that whatever force they used was to overcome unlawful resistance by Mr. Resnick. So by combining those two events... But unfortunately, the jury didn't find him guilty of 148. No, but the jury in the civil case, in the subsequent civil case, found that the officers did not use constitutionally excessive force. Different burden of proof. In the underlying civil case, it would have been preponderance of the evidence. Yeah, that's beyond a reasonable doubt. They've already found beyond a reasonable doubt that he didn't resist arrest. But it's just a question of whether there was probable cause for the prosecution, not whether or not he actually resisted arrest. So the determination that there is no malicious prosecution claim in this case can be upheld if the court finds that there was probable cause for the 148A resisting arrest charge in the first place, if there was probable cause to prosecute him. The fact that a jury determined in the civil case, admittedly with a lower standard of proof, that there was no excessive force necessarily means that the officers were properly engaged in the performance of their duties when they used whatever force they used against Mr. Resnick. If they used any force at all, and the complaint alleges that they used force, it had to have been used to overcome illegal resistance, which establishes probable cause for the malicious prosecution claim. Could you also just address this Manuel v. City of Joliet case? Does that have a potential to have an effect on this action? Your Honor, I'm not familiar with that case, but I don't believe so because this case is really dependent on California law, not federal law. Right, but if the Supreme Court says that for a 1983 malicious prosecution claim we don't look at the elements of California law, because it is a federal claim of a constitutional tort, then wouldn't that affect our ruling here? The Ninth Circuit has, and again, Your Honor, I apologize. I'm not familiar with that case. The Ninth Circuit has said that there is only a federal malicious prosecution claim when there is an allegation that there has been a violation of equal protection or when the prosecution, the alleged malicious prosecution, was used to deprive the defendant in the underlying case of a constitutional right. There are no such allegations here. Mr. Rezek wasn't a member of a suspect class, and there's no allegation that the underlying criminal charges were prosecuted for the purpose of depriving Mr. Rezek of a constitutional right other than the right not to be subjected to malicious prosecution, and if that were the only thing that were required, that's just a bootstrap argument. So there has to be some other constitutional right, First Amendment right of speech, First Amendment right of assembly, an equal protection claim, something like that that isn't present here. I just have, would my question about the litigation privilege be of other counsel? Probably, but if you want to ask it, I'm not sure what the question is. Well, it was, I think that it came up about on the conspiracy theory on that the California Court of Appeal held that reports by citizens to police regarding potential criminal activity fall within the litigation privilege, absolute privilege, and so it went to the allegations that the officers in IPC had, that there was a conspiracy. Your Honor, that would be better addressed to the IPC counsel. Okay, thank you. All right. Your Honors. All right, so we'll put the clock at five minutes then. I believe federal law, turning to the question. Just tell us your name. Raul Martinez for the IPC defendants, Reyes and Ibarra, the security guard. I believe federal law is the same on immunizing statements of witnesses in litigation, either statements to the police or witness statements in court. So I think in this situation, in a 1983 action, you come to the same result about protecting the statements made by the security guard. I guess what, can Mr. Rezek state a claim for conspiracy without relying on the statements made to the police officers? I think to have a conspiracy, you have to have a meeting of the minds, which is what Mr. Beck referred to. A meeting of the minds is just a euphemism for conversation, for discussion, communication. You can't have a conspiracy with a wink and a nod, which is what he's suggesting. What he's saying is that the security guards really came into the scene 15 minutes after the arrest. Now, that may have been disputed at trial, but it really goes to what they were going to testify to, what they told the police. It doesn't go to a conspiracy in the sense that you have an agreement to prosecute Mr. Rezek for resisting arrest. See, if you look at the malicious prosecution concept in California, we're not a party. We don't feel like we have a dog in this fight because we didn't file the charges. We did not investigate the charges. We're not the police. We're not the prosecutor. We're just the witness. These people are just witnesses. Now, Mr. Beck may disagree with their testimony. He may even think it was false testimony, but that's not enough to create a conspiracy or concerted action. Mr. Beck referred to Paragraph 8 in his response to Judge Baez's question of his third amended complaint. I looked at that last night. I don't see any allegations of a conspiracy, no specific allegations of an agreement, a meeting of the minds or anything like that. As Judge Carter found, this was all speculative. There was really no specific allegation of a conspiracy. Regardless of what the court does with certifying the question on Crowley, we don't feel like we're a part of this case. We're just witnesses. We're security guards. We're not cops, and we're not the prosecutor or the city. Fundamentally, that's our case, unless the court has any questions. No questions. I guess technically your co-counsel is entitled to use the rest of the time if she wants to. I don't need any of the time, though. Thank you. Thank you, Your Honor. Let me address your question, and that is, the complaint does not allege that the IPC defendants were co-conspirators in malicious prosecution. It alleges they conspired together to deprive constitutional rights. The witness that's recognized and pled in the complaint is the right to a fair trial. It is pled in the complaint not as a co-conspirator to the malicious prosecution. The conspiracy that's alleged is they came to a meeting of minds that they would never be there to testify and provide exculpatory information that they knew of in behalf of the defendant in the criminal proceedings. That's the difference. So what evidence is there of that? Well, it's all circumstantial except for the security guard dispatcher, who we finally got to testify at the trial. That man's testimony laid it out because we didn't have him in the criminal case. We were successful in bringing him into the civil case. He completely impeached the officer's testimony, completely impeached the testimony of the two security guards. And without going into the particular details, I don't know that I need to do that, but he finally shed light on the fact that there was a videotape in existence, that he was able to scan down with the video cameras and take a close look at what was going on, that that vehicle never left, that it just backed up to the spot that Mr. Resnick was found at, that those officers and those two IPC. I'm sorry? Mr. Beck, is any of the facts that you've just been reciting in paragraph eight? No, because what I just said couldn't be known at the time I pled eight. I didn't think so. Thank you very much. Okay. I think I'm almost out of time. The other point I would emphasize is that the Tustin defendants are conflating probable cause for 594 and probable cause for 148. The fact that we didn't prevail on the excessive force claim as a matter of Ninth Circuit authority has no reflection on whether there was probable cause to arrest for that crime at all. There simply was no unconstitutional force proven to the requisite standard. It can't be extrapolated backwards to say, well, therefore there was malice or there was not malice or there was probable cause or there was not probable cause. Those things have to be kept distinguished and analytically have to be distinguished, as the authority of our circuit says. Thank you. Thank you both for your argument. This matter will be submitted.
judges: Callahan, Bea, Ikuta